NUMBER 13-05-785-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


GILBERT RAMIREZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 404th District Court 

of Cameron County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Garza, and Vela


Memorandum Opinion by Justice Vela
 

 A jury found appellant, Gilbert Ramirez, guilty of aggravated assault by causing
serious bodily injury (1) and assessed punishment at six years' imprisonment, plus a $10,000
fine. In five issues, appellant complains: 1) the trial court erred in admitting hearsay
testimony, 2) the evidence is legally insufficient to support the conviction, 3) the trial court
erred in applying the law of self-defense to the facts, 4) the trial court failed to include an
extraneous-offense instruction in the charge, and 5) trial counsel was ineffective. We
affirm.

I. Background


A. State's Evidence

 Rick and Hilda Perez, husband and wife, worked for a company called Helping
Hands. Jessica Thompson was its director of operations, and she was appellant's
girlfriend. On the morning of June 30, 2005, Jessica fired Rick and Hilda. Later that
morning, Rick and Hilda went to the Casa Real Hotel where Helping Hands was holding
an employee's meeting. Rick abruptly entered the meeting room and told the audience he
and Hilda had been fired. As Rick was leaving, he told Jessica, "'I hope you never have
to call the 911 the next time your boyfriend beats you up.'" While Rick was in the hotel's
parking lot, appellant grabbed him from the back of his shirt. When Rick turned around,
appellant punched him in the left eye. Hilda did not see the assault, but she did see Rick
"on the ground . . . with blood gushing from his eye. . . ." 

 Los Fresnos police officer Juan Rodriguez arrived at the scene and saw Rick
"bleeding profusely from his left side of his face." He saw a "large laceration on his left eye,
upper left eye and lower part of his eye." He testified that Rick pointed out that he had
been assaulted by appellant.

B. Appellant's Evidence

 Appellant testified that as Rick was leaving the meeting room, he thought he heard
Rick tell Jessica, "'I hope you don't have to call 911 when you get beat up.'" This comment
made appellant "concerned" and "scared." When Rick was outside on the sidewalk,
appellant asked him what he had said. Rick turned and looked at him. Appellant testified
that Rick "was staring right at me and he took a step forward and made a quick motion with
both hands to my neck area." Appellant stated that "[W]hen [Rick] reached for my neck
area I swung and I hit him." He said that this was a "reaction" to the "aggression" and that
he did not intend to hit Rick.

 Jessica (Thompson) Ramirez, who at the time of trial was appellant's wife, heard
Rick tell her, "'I hope you don't to have call [sic] 911 again . . . for your boyfriend beating
you up.'" She followed appellant and Adam Thompson as they escorted Rick out the door. 
With respect to the assault, she testified that "Rick turned, Rick put his hands up and as
soon as he put his hands up I saw my husband [appellant] hit him and he [Rick] lost his
balance and he fell down. . . ."

 Adam Thompson, a Helping Hands' employee, testified that he followed appellant
and Rick as they left the meeting room. He stated that when he, appellant, and Rick were
on the sidewalk, "[H]e [Rick] turned back. And when he turned back I'm not sure if he
actually made contact with Mr. Ramirez [appellant] or not but his hands went up towards
him and Mr. Ramirez struck Mr. Perez one time and then backed away." Adam Thompson
did not see appellant grab Rick's shirt. He said that Rick turned around, took a step
forward, raised his hands towards appellant, and reached towards him. At that point,
appellant hit Rick in the face. Thompson stated that "Rick came at him [appellant] in a
violent manner" and that Rick "did attack him [appellant]."

II. Discussion


A. Hearsay

 In his first issue, appellant argues the trial court reversibly erred by admitting Officer
Rodriguez's hearsay testimony into evidence. On direct-examination, defense counsel
made a hearsay objection when the prosecutor asked Officer Rodriguez what Rick had told
him about the assault. The trial court overruled the objection, and Officer Rodriguez
testified that:

 When I made contact with Mr. Perez, he told me he had been
assaulted. Apparently, he was working for Helping Hands and he had been
terminated from his employment and he had gone to this Casa Real Hotel
where they were having a meeting there with his ex-employees and he just
wanted to say good-bye to his employees. He met with employees there,
said good-byes. As he is walking out, he makes a comment to Mr. Perez
[sic] "I hope you don't have to call police again on your husband" referring to
Jessica Thompson. As Mr. Perez walked out of the building and stuff, out
of no reason Gilbert [appellant] just punched him from the rear.

 We review a trial court's decision to admit evidence over objection under an abuse-of-discretion standard, and we will not reverse that decision absent a clear abuse of
discretion. McCarty v. State, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). A trial court
abuses its discretion when the decision lies outside the zone of reasonable disagreement. 
Id.

 Hearsay is a "a statement, other than one made by the declarant while testifying at
the trial or hearing, offered in evidence to prove the truth of the matter asserted." See Tex.
R. Evid. 801(d). Hearsay statements are not admissible unless they fall within a
recognized exception to the hearsay rule. Tex. R. Evid. 802. The excited-utterance
exception to the hearsay rule applies to "[a] statement relating to a startling event or
condition made while the declarant was under the stress or excitement caused by the
event or condition." Tex. R. Evid. 803(2) (emphasis added). 

 In determining whether a hearsay statement is admissible as an excited utterance,
the court may consider the time elapsed and whether the statement was in response to a
question. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). However, it is not
dispositive that the statement is an answer to a question or that it was separated by a
period of time from the startling event; these are factors to consider in determining whether
the statement is admissible under the excited utterance hearsay exception. Zuliani, 97
S.W.3d at 596. The critical determination is "whether the declarant was still dominated by
the emotions, excitement, fear, or pain of the event" or condition at the time of the
statement. Id. In other words, a reviewing court must determine whether the statement
was made "under such circumstances as would reasonably show that it resulted from
impulse rather than reason and reflection." Id.

 Here, it is clear that a startling event occurred. The record shows that Officer
Rodriguez arrived at the scene and saw Rick "bleeding profusely from the left side of his
face." He said that once Rick removed his hand, he saw "the large laceration on his left
eye, upper left eye and lower part of his left eye." He asked Rick "exactly what was going
on," and Rick "pointed out" that appellant had assaulted him. Thus, the evidence showed
that Rick (1) "was still dominated by the emotions, excitement, fear, or pain of the event"
or condition when he made the objected-to statements to Officer Rodriguez, and (2) these
statements resulted from impulse rather than reason and reflection. The fact that Rick's
statements were in the form of responses to questions does not make them inadmissible
to this exception to the hearsay rule. Declarations made either in response to questioning
or after some time had elapsed are only two factors in determining whether a statement
is an excited utterance. Id. Neither factor alone is dispositive; the key is "whether the
declarant was still dominated by the emotions, excitement, fear, or pain of the event." Id. 
Accordingly, the trial court did not abuse its discretion in admitting Officer Rodriguez's
testimony. Even assuming the trial court erred in admitting Officer Rodriguez's
testimony, any error in the admission of the evidence was cured. In Valle v. State, the
court of criminal appeals explained:

 To preserve error in admitting evidence, a party must make a proper
objection and get a ruling on that objection. In addition, a party must object
each time the inadmissible evidence is offered or obtain a running objection. 
An error in the admission of evidence is cured where the same evidence
comes in elsewhere without objection.

109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (footnotes omitted); see Leday v. State, 983
S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that "[o]ur rule . . . is that overruling
an objection to evidence will not result in reversal when other such evidence was received
without objection, either before or after the complained-of ruling"); Willis v. State, 785
S.W.2d 378, 383 (Tex. Crim. App. 1989) (noting that admission of inadmissible evidence
is rendered harmless if the same or similar evidence is introduced without objection
elsewhere during trial).

 Here, appellant did not obtain a running objection. Therefore, any error in the
admission of Officer Rodriguez's testimony was cured because the same or similar
evidence came in elsewhere without objection. (2) See Willis, 785 S.W.2d at 383. Issue one
is overruled.

B. Sufficiency of the Evidence

 In his second issue, appellant argues that the evidence was legally insufficient to
sustain his conviction because the State failed to prove Rick suffered serious bodily injury. 
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the
evidence in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hampton v. State, 165
S.W.3d 691, 693 (Tex. Crim. App. 2005). This standard gives full play to the responsibility
of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319. The
trier of fact is the sole judge of the weight and credibility of the evidence. Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim.
App. 2000). Thus, when performing a legal-sufficiency review, we may not re-evaluate the
weight and credibility of the evidence and substitute our judgment for that of the fact-finder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the judgment. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).

1. Aggravated Assault

 A person commits aggravated assault if the person commits an assault, and the
person causes serious bodily injury to another. Tex. Penal Code Ann. § 22.02(a)(1)
(Vernon Supp. 2008). The penal code defines serious bodily injury to be "bodily injury that
creates a substantial risk of death or that causes death, serious permanent disfigurement,
or protracted loss or impairment of the function of any bodily member or organ." Id. §
1.07(a)(46). (3) There are no wounds that constitute "serious bodily injury" per se. 
Hernandez v. State, 946 S.W.2d 108, 111 (Tex. App.-El Paso 1997, no pet.); see, e.g.,
Webb v. State, 801 S.W.2d 529, 533 (Tex. Crim. App. 1990) (concluding that the necessity
for surgery, alone, is insufficient to establish serious bodily injury); Moore v. State, 739
S.W.2d 347, 352 (Tex. Crim. App. 1987) (a knife wound, even though it may be caused
by a deadly weapon, is not per se serious bodily injury). Whether an injury constitutes
"serious bodily injury" must be determined on a case-by-case basis. Moore, 739 S.W.2d
at 352; Eustis v. State, 191 S.W.3d 879, 884 (Tex. App.-Houston [14th Dist.] 2006, pet.
ref'd). The appellate court must evaluate each case on its facts to determine whether the
injury was of a type that allowed the fact finder to determine that it met the definition of
serious bodily injury. Hernandez, 946 S.W.2d at 111.

 Serious bodily injury may be established in the absence of a physician's testimony
when the injury and its effects are obvious. Carter v. State, 678 S.W.2d 155, 157 (Tex.
App.-Beaumont 1984, no pet.). A person who receives injuries is qualified to express an
opinion about the seriousness of those injuries. Hart v. State, 581 S.W.2d 675, 677 (Tex.
Crim. App. 1979). 

2. Serious Permanent Disfigurement

 Because the record does not show that Rick's injuries created a substantial risk of
death, (4) the relevant inquiry is whether his injuries caused serious permanent disfigurement. 
The court of criminal appeals has long held that in assessing the sufficiency of the
evidence to establish serious bodily injury, the question is the degree of risk of death that
the injury caused, or the injury's disfiguring or impairing quality, as it was inflicted, not after
the injury's effects had been ameliorated or exacerbated by other actions such as medical
treatment. Stuhler v. State, 218 S.W.3d 706, 714 (Tex. Crim. App. 2007); Brown v. State,
605 S.W.2d 572, 575 (Tex. Crim. App. 1980), (5) overruled on other grounds, Hedicke v.
State, 779 S.W.2d 837 (Tex. Crim. App. 1989).


3. Analysis 

 In this case, Rick testified that after appellant punched him in the left eye, he went
to the hospital and received stitches for the lacerations. Later, he saw Dr. John Howe, an
ophthalmologist, who ordered a CAT scan. Rick testified that Dr. Howe told him that his
eye "had sunk and it's being pushed back." Rick also testified that the CAT scan showed
he had "a blowout fracture back there in the eye and but he [Dr. Howe] needs to refer me
to the ear nose and throat doctor to see if I need surgery for medical reasons. But he did
recommend maybe if I want to have cosmetology surgery to raise the eyeball back up." 
When the prosecutor asked Rick, "[A]s a result of that blow, do you have disfigurement to
your eye?", he answered, "Yes, sir." When the prosecutor asked Rick to explain what
happened to his eye, he stated:

 Well, it was a laceration and just a lot of blood, nine stitches, cut the
top and the part of the eyebrow here, six on the bottom and three stitches on
the top, and according to my results I have a blowout fracture. Apparently,
the bones in my eyes are real delicate and thin and as a result this eyeball
if you look at it closely it's dropped. It's dropped and it's being pushed back,
so.

When the prosecutor asked Rick to "Tell the jury what's wrong with your eye?", he stated: 
"Well, if you can tell the difference how this one has dropped slightly than this eye. And
it's according to the results it's just being pushed back slightly, but it's dropped literally, and
I found out when I see the ear nose specialist."

 When the prosecutor asked Hilda Perez, "Does [Rick] have lasting injuries even
today as a result of this incident?", she replied, "He has a scar and his eye is sunken." 
When the prosecutor asked her, "Is there disfigurement of the eye?", she said, "I can tell
his eye is sunken." When asked what she meant by "sunken," she said, "[H]is eye closes
up a little later than this one and it's just, just a little like sunken in. It's not symmetrical. 
It's asymmetrical and he has a scar here and here."

 Rick's medical records, offered into evidence by the State, indicate the following:


 The left orbit demonstrates a blow out fracture of the floor. There is also
medial orbital wall/lamina papyracea fracture. Some of the intraorbital fat is
displaced into the roof of the left maxillary sinus, which shows mucosal
thickening. Also, the left lobe is sunken as compared to the right. There is
mild mucosal thickening in the ethmoids bilaterally. Nasoseptal deviation is
seen to the left.

 Thus, a rational jury could have found: (1) Rick suffered a blow-out fracture to his
left eye; (2) as a result, the eye was sunken, asymmetrical, pushed back, and closed up
"a little later" than the unaffected eye; (3) these injuries to Rick's eye were present at the
time of trial; and (4) absent surgery, Rick's eye will remain sunken.

 This evidence established the disfiguring and impairing quality of Rick's bodily injury
at the time appellant punched him in the eye. When making a determination of serious
bodily injury, the jury is free to apply common sense, knowledge, and experience gained
in the ordinary affairs of life in drawing reasonable inferences from the evidence. Eustis,
191 S.W.3d at 884. A rational jury could have found beyond a reasonable doubt that the
evidence established Rick had suffered serious permanent disfigurement. When viewed
in the light most favorable to the verdict, the evidence is legally sufficient to support the
conviction. See Brown, 605 S.W.2d at 575 (holding that broken nose was serious bodily
injury because it would be disfigured and impaired if not treated); Moore v. State, 802
S.W.2d 367, 369 (Tex. App.-Dallas 1990, pet. ref'd) (concluding that sufficient evidence
of serious bodily injury when victim's cheek bone was fractured in three places; surgery
necessary to prevent significant cosmetic deformity). Issue two is overruled.

C. Charge Error

 In issue three, appellant argues that the trial court erred by failing to include the law
of self-defense in the jury charge. When evaluating charge error, we first determine
whether there was error in the charge. Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim.
App. 1985) (op. on reh'g). If so, "the next step is to make an evidentiary review . . . as well
as a review of any other part of the record as a whole which may illuminate the actual, not
just theoretical, harm to the accused." Id. 

1. The Law of Self-Defense

 The defendant bears the burden of production of some evidence that raises self-defense. Zuliani, 97 S.W.3d at 594; Saxton v. State, 804 S.W.2d 910, 913 (Tex. Crim.
App. 1991). Once the defendant produces this evidence, the State has the burden of
persuasion to show the defendant did not act in self-defense. Zuliani, 97 S.W.3d at 594;
Saxton, 804 S.W.3d at 913-14. To meet this burden, the State is not required to produce
evidence to disprove self-defense but only to prove its case beyond a reasonable doubt. 
Zuliani, 97 S.W.3d at 594; Saxton, 804 S.W.2d at 913. 

 Section 2.03(d) of the penal code provides, "[i]f the issue of the existence of a
defense is submitted to the jury, the court shall charge that a reasonable doubt on the
issue requires that the defendant be acquitted." Tex. Penal Code Ann. § 2.03(d) (Vernon
2003). If a court submits an issue of the existence of self-defense to the jury, any flaw in
the charge on self-defense amounts to error in the charge. Barrera v. State, 982 S.W.2d
415, 416 (Tex. Crim. App. 1998). In this case, because the charge instructed the jury on
the law of self-defense, but did not apply the law to the facts as required by section 2.03(d),
we conclude there was error in the charge. See Tex. Penal Code Ann. § 2.03(d); Barrera,
982 S.W.2d at 416-17.

Harm Analysis

 The failure to include a reasonable-doubt instruction regarding self-defense is
subject to a harm analysis under Almanza. Barrera, 982 S.W.2d at 417. When, as in this
case, an accused complains of an unobjected-to error in the charge, "he will obtain a
reversal only if the error is so egregious and created such harm that he 'has not had a fair
and impartial trial'-in short 'egregious harm.'" Almanza, 686 S.W.2d at 171. The error must
"'go to the very basis of the case,'" "deprive the accused of a 'valuable right,'" or "'vitally
affect his defensive theory.'" Id. at 172. The degree of harm, sufficiently serious to be
called "egregious," is present whenever a reviewing court finds the case for conviction or
punishment was actually made clearly and significantly more persuasive by the error. 
Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Egregious harm is a
difficult standard to prove and must be determined on a case-by-case basis. Ellison v.
State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The actual degree of harm is
determined in light of the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel, and any other
relevant information revealed by the record of the trial as a whole. Almanza, 686 S.W.2d
at 171.

a. Entire Jury Charge

 Here, the court (1) instructed and applied the law of aggravated assault to the facts
of the case; (2) instructed the jury on the law of self-defense; (6) (3) correctly placed the
burden on the State to prove each element of the offenses beyond a reasonable doubt; (7)
and (4) instructed the jury that appellant was not required to prove his innocence or to
produce any evidence. The application paragraph included the following instruction: 
"Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof,
you will find the defendant not guilty."

 The charge further instructed the jury that: "In the event you have a reasonable
doubt as to the defendant's guilt after considering all the evidence before you, and these
instructions, you will acquit him and say by your verdict 'Not Guilty.'" (emphasis added). 
There was no mention that appellant might have some burden of proof on any issue.

 We presume that the jury followed the trial court's instructions. Resendiz v. State,
112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (citing Colburn v. State, 966 S.W.2d 511, 520
(Tex. Crim. App. 1998)). We conclude that, despite the court's failure to instruct the jury
as required by section 2.03(d), the charge, as a whole, adequately conveyed to the jury
that it was required to acquit appellant if it had a reasonable doubt as to any element of the
offense. See Zuliani, 97 S.W.3d at 594 (to meet its burden of persuasion to show
defendant did not act in self-defense, State was required to prove its case beyond
reasonable doubt).

b. State of the Evidence and Contested Issues

 Appellant and his witnesses testified that Rick was the aggressor. On the other
hand, Rick testified that appellant grabbed his shirt and punched him in the face. Officer
Rodriguez testified that appellant struck Rick from behind. Thus, the State controverted
appellant's self-defense claim. The jury's decision turned on credibility and, in our view,
was not influenced by the error in the charge.

c. Arguments of Counsel

 In its closing argument, the State focused on the seriousness of the injury, that
appellant did not act in self-defense, the credibility of appellant's witnesses, and that there
was "no evidence that he [Rick] was menacing or threatening the defendant's wife or the
defendant's unborn baby." (8)

 Defense counsel argued that, "[M]y client . . . was trying to protect himself and the
people he cared for." He further argued, "What I do have to prove is my client's argument
of self defense. I have a burden here, but it's not as high as theirs [the State's]. When you
are reading the Charge look at paragraph six. This is important because this is what my
client and all the witnesses have been telling you. They [the State] have offer [sic] no
witness other than Rick Perez who said, "I saw him hit." Counsel further argued:

 He [appellant] didn't know what they [Rick and Hilda Perez] were going to do. 
This is the exact type of situation you hear about on TV all the time and he
did something about it to make sure his friend and his family are safe
including himself. Yes, and that's not selfish, it's self protection. . . .


 You have to agree that he [appellant] did have the right to self
defense. You are allowed to strike out before if you believe in your mind
sincerely that you are in imminent danger, that's what the Charge says. It
says what would a reasonable person do. . . .


 You have enough evidence before you to find my client not guilty because
of his self defense. His actions were reasonable; it was just one punch. . .

 I don't have to prove the self defense by beyond a reasonable doubt. 
I don't have that burden, just what would a reasonable person do. We have
different levels of definition for that. Just think about what would a person do
put in that situation and that will guide you. If that's the case on any one of
those three, you have to find him not guilty. . . .


 Thus, counsel addressed the burden of proof on self-defense in closing argument. 
 d. Other Relevant Information

 Finally, the record does not reflect the jury was confused about the applicable
burden of proof or about the State's burden to prove all elements of its case beyond a
reasonable doubt.


Application


 Based on our review, appellant has not shown that the court's failure to instruct the
jury as required by section 2.03(d) of the penal code affected the very basis of the case,
deprived him of a valuable right, or vitally affected his defensive theory. Even though the
charge did not include an application paragraph on the law of self-defense, it did instruct
the jury on the elements of self-defense in the abstract. Appellant relied on self-defense
as a defensive theory, and, beginning with jury selection and ending with closing argument,
urged the jury to consider the issue of self-defense. Appellant and other witnesses testified
regarding his self-defense claims, and the State provided controverting testimony. 
Considering the jury was given a general instruction on the law of self-defense, and
appellant discussed self-defense throughout the trial, we conclude the charge error at issue
did not cause egregious harm. Issue three is overruled.

 In issue four, appellant argues the court erred in failing to sua sponte include an
instruction in the jury charge that the jury could consider evidence of extraneous offenses
and bad acts only if the State proved the offenses and bad acts beyond a reasonable
doubt. He argues the court should have included the instruction even though not
requested.

 During the State's cross-examination of Jessica Ramirez at the guilt-innocence
phase, she testified that after the assault, she gave a written statement to the police. With
respect to this statement, the prosecutor asked her:

 Q. Do you remember saying "I returned to the meeting and I saw Rick
and Hilda hugging everyone and crying. They finished hugging and
were being escorted out by hotel maintenance. When Rick turned to
me and said I hope you don't to have [sic] call 911 again for your
boyfriend who beats you up." Do you remember making that
statement?

 

 A. As I said yesterday, yes. I remember him making that statement to
me and that's how I filed my statement.


 Q. Is that statement true?


 A. Of course it's true, yes.

 Appellant argues that a limiting instruction was needed because based upon this
testimony, "the State prejudicially and purposefully brought extraneous bad acts" to the
jury.


 At the punishment phase of a non-capital case, the use of extraneous-offense
evidence is governed by article 37.07 of the code of criminal procedure. Delgado v. State,
235 S.W.3d 244, 252 (Tex. Crim. App. 2007). Under this article, evidence of extraneous
offenses--acts of misconduct not shown in the charging instrument--is admissible at
punishment for any relevant purpose but only if the State can prove those offenses beyond
a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp.
2008); Delgado, 235 S.W.3d at 252. This article is the "law applicable" to all non-capital
punishment proceedings and must be included in the punishment charge regardless of
whether it was requested. Delgado, 235 S.W.3d at 252.

 Here, the punishment charge provided, in relevant part:

 The State has introduced evidence of extraneous crimes or bad acts
other than the one charged in the indictment in this case. This evidence was
admitted only for the purpose of assisting you, if it does, in determining the
proper punishment for the offense for which you have found the defendant
guilty. You cannot consider the evidence for any purpose unless you find
and believe beyond a reasonable doubt that the defendant committed such
other acts, if any, were committed.

 Because the punishment charge included the instruction required by article 37.07,
section 3(a)(1), no error occurred. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(Vernon Supp. 2008); Delgado, 235 S.W.3d at 252.

 Article 37.07, section 3(a)(1) does not apply to extraneous offense evidence at the
guilt-innocence phase of trial. Delgado, 235 S.W.3d at 252. Accordingly, a trial court must
include the reasonable-doubt instruction in the guilt-innocence charge only upon request. 
Id. at 254. Here, no error occurred in the court's failure at guilt-innocence to instruct the
jury on the State's burden of proof concerning extraneous offenses because appellant did
not request the instruction. Id. Therefore, issue four is overruled.

D. Ineffective Assistance of Trial Counsel

 In his fifth issue, appellant argues he received ineffective assistance of counsel at
the punishment phase. To prove ineffective assistance of trial counsel, an appellant must
satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687
(1984). See Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). First, he
must show counsel's representation fell below an objective standard of reasonableness. 
Second, he must show there is a reasonable probability that, but for counsel's errors, the
result of the trial proceedings would have been different. See Strickland, 466 U.S. at 694. 
"A reasonable probability is a probability sufficient to undermine confidence in the
outcome." Id. To determine whether this test has been satisfied on appeal is to judge by
the totality of the representation, not by isolated acts or omissions. Jayne v. State, 216
S.W.3d 839, 851 (Tex. App.-Corpus Christi 2006, no pet.). Generally, isolated failures by
counsel do not constitute error in light of the sufficiency of the overall representation. Id. 
In order for an appellant to overcome this Court's presumption of reasonable professional
assistance, "'any allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.'" Salinas v. State, 163
S.W.3d 734, 740 (Tex. Crim. App. 2005) (quoting Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999)). The burden of proof is on the appellant, who must establish his
or her claims by a preponderance of the evidence. Jackson v. State, 973 S.W.2d 954, 956
(Tex. Crim. App. 1998).

 First, appellant argues trial counsel was ineffective because during the punishment
phase, he failed to object to the State's re-offer of the evidence it had adduced at the guilt-innocence phase. If counsel's reasons for his or her conduct do not appear in the record
and there is "at least the possibility" that the conduct could have been grounded in
legitimate trial strategy, we will defer to counsel's decisions and deny relief on an
ineffective-assistance claim on direct appeal. Garza v. State, 213 S.W.3d 338, 348 (Tex.
Crim. App. 2007). Here, trial counsel's reason for failing to object to the State's re-offer of
evidence does not appear in the record, (9) and his conduct could have been part of a
reasonable trial strategy. Without more, we must defer to counsel's decisions and deny
relief. See id.

 Second, appellant argues that during the punishment phase, trial counsel was
ineffective for failing to object to the testimony of Michelle James, a case worker and
special services supervisor for the Kleberg County Community Supervision and Corrections
Department. The State called her to testify about appellant's involvement in two counts
of aggravated assault against the same victim. She testified appellant was currently on
eight years' deferred adjudication community supervision for these offenses. (10) With
respect to the details of the offenses, Ms. James stated, in relevant part, that appellant
"pulled at her [the victim's] shirt, tossed her onto the bed, proceeded to choke her, used
his forearm as well during the attack, and he also slapped her in the face several times
even eventually breaking her nose." Trial counsel did not object to this testimony.

 On cross-examination, when counsel asked her, "How are you familiar with the
previous case out of Kleberg County?", she replied, "I have the file in front of me. I have
reviewed the file. It contains all the business records[ (11)] that we have kept over the course
of [appellant's] community supervision period."

 Even though article 37.07, section 3(a) of the code of criminal procedure permits the
jury to hear the details of a defendant's criminal history, (12) the statute does not allow these
details to be based upon hearsay. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(Vernon Supp. 2008). Because Ms. James's testimony concerning the details of the
offenses was hearsay, and because trial counsel failed to object to this testimony,
counsel's representation fell below an objective standard of reasonableness. See
Strickland, 466 U.S. at 694. However, despite the hearsay testimony, appellant only
received a six-year sentence. This sentence fell within the low end of the punishment
range for aggravated assault, a second-degree felony. We note that in closing argument,
the State asked the jury to sentence appellant to no less than eight years in prison. Thus,
appellant has failed to show there is a reasonable probability that, but for counsel's error,
the result of the punishment trial would have been different. See Strickland, 466 U.S. at
694.

 Third, appellant argues trial counsel was ineffective for failing to object to Ms.
James's opinion about his character. When the State's attorney asked Ms. James, "[D]o
you have an opinion as to the type of individual [appellant] is after he's been on probation
with you?", she replied, "Certainly he has not been a model probationer. He has
reoffended, he's violated the laws of this state and is currently on trial for that offense." 
Trial counsel did not object to this testimony.

 On cross-examination, appellant's counsel elicited testimony (13)
 from Ms. James that
appellant was not a good candidate for probation.

 Article 37.07, section 3(a) provides:

 Regardless of the plea and whether the punishment be assessed by
the judge or the jury, evidence may be offered by the state and the
defendant as to any matter the court deems relevant to sentencing, including
but not limited to the prior criminal record of the defendant, his general
reputation, his character, an opinion regarding his character, the
circumstances of the offense for which he is being tried, and, notwithstanding
Rules 404 and 405, Texas Rules of Evidence, any other evidence of an
extraneous crime or bad act that is shown beyond a reasonable doubt by
evidence to have been committed by the defendant or for which he could be
held criminally responsible, regardless of whether he has previously been
charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2008) (emphasis added).

 Rule 602 of the Texas Rules of Evidence provides, "A witness may not testify to a
matter unless evidence is introduced sufficient to support a finding that the witness has
personal knowledge of the matter." Tex. R. Evid. 602. Rule 701 states:

 [i]f the witness is not testifying as an expert, the witness's testimony in the
form of opinions or inferences is limited to those opinions or inferences which
are (a) rationally based on the perception of the witness and (b) helpful to a
clear understanding of the witness' testimony or the determination of a fact
in issue.

Tex. R. Evid. 701.

 The evidence shows that Ms. James had worked about twelve years for the Kleberg
County Community Supervision & Corrections Department, that she currently worked there
as a case worker special services supervisor, that she was familiar with appellant because
he was currently on community supervision in Kleberg County, that she had made contact
with appellant, that she supervised appellant's community-supervision officer, that she was
familiar with appellant's case out of Kleberg County because she had reviewed his file, that
she had a copy of the offense report regarding the case now before us, and that appellant
had received anger-management courses. Because Ms. James's testimony is rationally
based on her perception and is helpful to a determination of a fact in issue--appellant's
punishment--we conclude it is in compliance with article 37.07, section 3(a)(1) and rule
602. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2008); Tex. R.
Evid. 602; see also Sims v. State, No. PD-1575-07, 2008 WL 2596950 *3 (Tex. Crim. App.
July 2, 2008) (holding that character evidence in the form of opinion testimony may be
admissible during punishment trial, even if the opinion testimony is based upon facts
brought forth from extraneous-offense testimony); Ellison v. State, 201 S.W.3d 714, 722-23
(Tex. Crim. App. 2006) (stating that a probation officer may give opinion on defendant's
suitability for probation). Thus, by failing to object to Ms. James's opinion about appellant's
character, counsel's representation did not fall below an objective standard of
reasonableness. See Strickland, 466 U.S. at 694.

 Fourth, appellant argues trial counsel was ineffective for failing to object to Rick's
testimony about what the doctors told him about his injury. During the punishment phase,
when the State's attorney asked Rick, "Do you feel that you have a permanent injury as a
result of the crime?", he replied:

 Yes, I do. I did confer with another medical doctor that didn't come up
about having surgery and I was advised that it would be risky. No, it would
not be risky, risky is the wrong word. That it would be--I'm taking a chance. 
Like, you know, maybe you should consider leaving it alone, you know,
because who is to say if they do the surgery you are messing with your eye,
they are all these nerves around, if they do anything wrong, cut it, you
might--it might be worse for you in the long run if you do have the surgery,
you know. Now I know the MRI specialist, the ophthalmologist told me that
he wanted the ear, nose and throat doctor, ENT, to decide, have the final say
so if I should have the surgery or not, so I meet with him he has a long
waiting list, sometime in a couple of months and so we'll see from there. As
far as the scar, I don't know. I've been told to have plastic surgery and again
that's one of those things they could take away, but I don't know. Don't know
what I'm going to do there.

 Rick's testimony with respect to his injury was based in large part on hearsay. See
Tex. R. Evid. 801(d). However, any error in the admission of this testimony is harmless
because the same or similar evidence came in elsewhere without objection. See Willis,
785 S.W.2d at 383 (noting that admission of inadmissible evidence is rendered harmless
if the same or similar evidence is introduced without objection elsewhere during trial). 
Because similar evidence, not based on hearsay was admitted without objection, appellant
has failed to show there is a reasonable probability that, but for counsel's failure to object,
the result of the punishment trial would have been different. See Strickland, 466 U.S. at
694.

 Fifth, appellant argues trial counsel was ineffective for failing to object to Rick's
opinion about appellant's punishment. When the State asked Rick, "[W]hat result would
you like to see here as far as punishment of the defendant?", he replied, "If possible--I
don't know how this works, I really don't. If possible, if [appellant] could be like on parole
long enough to see his child be born, . . . . And I don't feel qualified to say; just the Court
to decide." Counsel did not object to this testimony.

 In Fryer v. State, the court of criminal appeals suggested that a victim's punishment
recommendation may be admissible lay testimony under rule 701. 68 S.W.3d 628, 631
n.22 (Tex. Crim. App. 2002). (14) Even assuming counsel's failure to object constituted
deficient performance, appellant has failed to show how the deficient performance
prejudiced the jury's determination of his punishment, especially in light of Rick's testimony
that he did not "feel qualified to say" what punishment appellant should receive and that
he wanted "the Court to decide."

 Sixth, appellant argues trial counsel was ineffective for failing to request a limiting
instruction at the time the State elicited evidence of an extraneous offense or bad act. On
re-direct examination during the punishment phase, the State's attorney questioned Rick
about the comment he had made to Jessica regarding the 911 call. Specifically, the
State's attorney asked him:

 Q. Did you believe the statement to be true when you said it?


 * * * *


 A. Yes. From what I--I mean, I knew there was an incident where 911
had to be called between [Jessica] and [appellant] the month prior. 
As far as like did [appellant] actually physically hurt her, I really don't
know. I just knew there was an unfortunate incident among both of
them.


 * * * *


 Q. Well, there's been evidence earlier today that your statement was to
Jessica "I hope you don't to have call 911 for your boyfriend beating
you up" is that correct?


 A. Yes, ma'am.


 * * * *


 Q. But when you said the statement, did you say it because you believed
it to be true?


 A. Yes, ma'am.

 Counsel neither objected to this testimony nor requested a limiting instruction at the
time it was elicited. A party opposing evidence has the burden of objecting and requesting
a limiting instruction at the introduction of the evidence. Garcia v. State, 887 S.W.2d 862,
878 (Tex. Crim. App. 1994). Because trial counsel failed to either object or request a
limiting instruction when this testimony was introduced, his representation fell below an
objective standard of reasonableness. See Strickland, 466 U.S. at 694. Nevertheless, as
previously discussed in issue four, the punishment charge included a limiting instruction. 
In addition, during the punishment phase, the defense called Jessica as a witness. With
respect to the 911 call, she testified that she and appellant had an argument; that she got
into the van; and that while appellant held onto the van's outside mirror, she backed out
of the driveway and "drug him down the driveway with the van. . . ." She called 911 and
"asked them to intercede so I wouldn't run over him with the car." Accordingly, Jessica's
testimony showed the jury that Rick's statement that Jessica had called 911 because
appellant had beat her up was inaccurate. Thus, appellant has failed to show there is a
reasonable probability that, but for counsel's error, the result of the punishment trial would
have been different. See Strickland, 466 U.S. at 694.


 Seventh, appellant contends that during the punishment phase, trial counsel was
ineffective for failing to object based on lack of notice (15) when the State introduced evidence
of (1) the two aggravated-assault offenses from Kleberg County and (2) Jessica's 911 call. 
Appellant's contention presumes that an objection by trial counsel based on lack of notice
would have succeeded in excluding this evidence. Furthermore, the appellate record does
not show that trial counsel lacked notice that the State intended to introduce evidence of
these extraneous offenses or bad acts at the punishment phase.

 We note that the State filed its "NOTICE OF EXTRANEOUS OFFENSES OR BAD
ACTS," in which it gave notice (16) of its intent to use the two aggravated-assault offenses
from Kleberg County. The notice did not include the State's intent to use Jessica's 911
call. However, the fact that Jessica had called 911 was previously admitted into evidence
at the guilt-innocence phase. Furthermore, Jessica's testimony at the punishment phase
was that she did not call 911 because of appellant's violent behavior. Thus, counsel's
failure to object to the lack of notice of the State's intent to introduce evidence of the 911
call could have been legitimate trial strategy in order to attack Rick's credibility. If counsel's
reasons for his or her conduct do not appear in the record and there is "at least the
possibility" that the conduct could have been grounded in legitimate trial strategy, we will
defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct
appeal. Garza, 213 S.W.3d at 348. Accordingly, appellant has failed to establish, by a
preponderance of the evidence under the first prong of the Strickland test, that trial
counsel's failure to object based on lack of notice constituted performance that fell below
the objective standard of professional norms. See Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002). 

 Eighth, appellant argues trial counsel was ineffective for failing to object to the
State's closing argument at the punishment phase. The complained-of remarks are:

 Yes, you know his [appellant's] wife is sad and his family is sad and I feel
sorry for them, but I do not feel sorry for Gilbert Ramirez. . . . [I]n Kleberg
County . . . [h]e broke the victim's nose, Ladies and Gentleman. You heard
the probation officer. He broke her nose. . . . [H]is wife had to call 911 just
this year on him because of his violent temper and now, not only did he
break that lady's nose, . . . . This man has anger management problems.

 The scope of proper jury argument is: (1) summation of the evidence; (2) any
reasonable deduction from the evidence; (3) an answer to argument of opposing counsel;
and (4) a plea for law enforcement. Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App.
1990). Reversible error results from improper prosecutorial argument only when argument
is extreme, manifestly improper, injects new and harmful facts into the case or violates a
mandatory statutory provision and is thus so inflammatory that its prejudicial effect cannot
reasonably be cured by judicial instruction. Hernandez v. State, 819 S.W.2d 806, 820
(Tex. Crim. App. 1991).


 Here, the remarks can be considered a reasonable deduction from the evidence
presented or a plea for law enforcement. Even though the prosecutor's remarks that
appellant "broke the victim's nose" are based upon Ms. James's hearsay testimony,
appellant has failed to show there is a reasonable probability that, but for counsel's error
in failing to object to the remarks, the result of the punishment trial would have been
different. See Strickland, 466 U.S. at 694.

 Ninth, we consider whether counsel was ineffective for failing to request a jury
instruction that the jury could draw no adverse inferences from appellant's failure to testify
at the punishment phase. Appellant testified during the guilt-innocence phase, but did not
testify at the punishment phase. The trial court did not instruct the jury at the punishment
phase on appellant's right to remain silent without any adverse inferences being drawn
therefrom. There was no request from counsel for such an instruction nor was any
objection to the charge made based on the instruction's omission. 

 Upon a defendant's request, a trial judge must instruct jurors that they may not draw
any adverse inference from a defendant's failure to testify at the punishment phase. 
Beathard v. State, 767 S.W.2d 423, 432 (Tex. Crim. App. 1989). In the absence of a
proper request or timely objection, the trial court is under no obligation to give the
instruction and does not err in excluding the no-adverse-inference instruction in the
punishment charge. Michaelwicz v. State, 186 S.W.3d 601, 624 (Tex. App.-Austin 2006,
pet. ref'd). The decision to request a no-adverse-inference instruction is discretionary and
a matter of trial strategy. Calderon v. State, 950 S.W.2d 121, 132 (Tex. App.-El Paso
1997, no pet.); see also Michaelwicz, 186 S.W.3d at 624 ("Defense counsel may not want
the 'no adverse inferences' instruction given for a variety of reasons.").

 Here, trial counsel's reasons for his actions or intentions do not appear in the record,
and his conduct could have been part of a reasonable trial strategy. Without more, we
must defer to counsel's decisions and deny relief. See id.

 Lastly, appellant argues trial counsel was ineffective because, even though counsel
filed an application for community supervision, counsel failed to prove he was eligible for
community supervision. To be eligible for jury-recommended community supervision, the
defendant bears the burden of proving that he or she has no prior felony convictions. 
Speth v. State, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999).

 During the guilt-innocence phase, appellant replied, "No, sir", when the State's
attorney asked him if he had "ever been convicted of a felony in the last 10 years?" The
State, at the punishment phase, re-offered the evidence adduced at the guilt-innocence
phase. Accordingly, that evidence was before the jury at the punishment phase. 
Furthermore, at the punishment phase, Ms. James testified appellant "was not convicted
of the two counts of aggravated assault" out of Kleberg County.

 It is conceivable that counsel's decision to rely on the aforementioned testimony to
prove appellant's eligibility for community supervision was a strategic choice. Because
appellant was requesting the jury grant him community supervision in lieu of confinement,
counsel may have thought if he put appellant on the stand, this would subject him to cross-examination, which would allow the State to prove evidence of extraneous offenses and
even bad acts deemed relevant. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(Vernon Supp. 2008). In closing argument, counsel implored the jury to grant community
supervision. We have no record from which to evaluate the rationale of counsel in
choosing the course of action that he did, and it is beyond our purview to second guess
counsel's strategy even if the choice of strategy was not successful. If there is at least the
possibility that the conduct could have been legitimate trial strategy, then we must defer
to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal. 
Murphy v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003). The charge gave the jury
the option of giving appellant community supervision, and there is nothing in the record to
show that the jury had a question about his eligibility for community supervision. Issue five
is overruled.

III. Conclusion

 We affirm the trial court's judgment.

 


 

 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and

filed this 22nd day of January, 2009.
1. See Tex. Penal Code Ann. § 22.02(a)(1) (Vernon Supp. 2008).
2. After Officer Rodriguez gave the objected-to testimony, the prosecutor, without objection, continued
to question him as follows:


 Q. When you say he [Rick] was struck from behind, was he struck in the back of his
head or what do you mean?


 A. He was walking away, walking towards his vehicle, when Mr. Ramirez [appellant]
was exiting the building[;] he, I guess, punched him from behind and struck him in
the eye, the left side of the eye.


 Q. So who approached who?


 A. Mr. Ramirez walked up to Mr. Perez.


 Q. Mr. Perez is walking away?


 A. Yes, sir.


 Q. And Mr. Ramirez approaches?


 A. That's correct. Doesn't say anything to Mr. Perez, just strikes him. And strikes him
once and hits him on the left side of his face.


After Officer Rodriguez identified appellant in the court room, the prosecutor continued as follows:

 Q. Is that the person [appellant] that you were told who did the striking?


 A. Yes, sir.


 Q. And who told you this?


 A. Mr. Perez.


 * * * *


 Q. Now, you stated the victim was not welcomed at the [Helping Hands] meeting but do
you know the specific facts of why he was not welcome?


 A. He was terminated from employment from Helping Hands and they were having their
own private meeting and I believe Mr. Jack Keiger was the motivational speaker for
the company and interrupted his meeting, . . . .
3. This definition stands in contrast to "bodily injury," which is required to maintain a conviction for
assault. See Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2008). Bodily injury means physical pain,
illness, or any impairment of physical condition. Id. § 1.07(a)(8).
4. We note that in Gonzales v. State, 191 S.W.3d 741 (Tex. App.-Waco 2006, pet. ref'd), Gonzales
hit the victim in the face, causing an orbital blow-out fracture. Id. at 753. The victim's treating physician
testified that "the orbital fracture is a dangerous injury because it is caused by a 'pretty good force' and is [sic]
places the victim at risk for head injury, brain injury, and potentially death." Id.
5. In Brown v. State, the victim's nose was broken. 605 S.W.2d 572, 575 (Tex. Crim. App. 1980). Even
though the broken nose was set, there was evidence that the injury would have caused permanent
disfigurement and dysfunction absent the medical treatment. Id. The court of criminal appeals held that
because the relevant issue in determining the degree of disfigurement is the damage caused by the wound
when inflicted, and not after the effects of the injury are ameliorated or exacerbated by medical treatment, the
evidence was sufficient to show serious bodily injury. Id.
6. With respect to the law of self-defense, the charge provided: 

 Upon the law of self-defense, you are instructed that a person is justified in using 
force against another when and to the degree he reasonably believes the force is
immediately necessary to protect himself against the other person's use or attempted use
of the unlawful force.


See Tex. Penal Code Ann. § 9.31(a) (Vernon Supp. 2008).


 A person is justified in using deadly force against another if he would be justified in using force against
the other in the first place, as above set out, and when he reasonably believes that such force is immediately
necessary to protect himself against the other person's use or attempted use of unlawful deadly force, and
if a reasonable person in defendant's situation would not have retreated.


See Tex. Penal Code Ann. § 9.32(a)(1), (a)(2), (a)(2)(A) (Vernon Supp. 2008) 


 By the term "deadly force" is meant force that is intended or known by the person using it to cause,
or in the manner of its use or intended use is capable of causing, death, or serious bodily injury.


See Tex. Penal Code Ann. § 9.01(3) (Vernon Supp. 2008).


 By the term "reasonable belief" as used herein, is meant a belief that would be held by an ordinary
and prudent person in the same circumstances as the defendant. 
7. Specifically, the charge stated: "The prosecution has the burden of proving the defendant guilty and
it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if
it fails to do so, you must acquit the defendant"
8. Jessica (Thompson) Ramirez testified during the guilt-innocence stage that she was pregnant when
the assault occurred.
9. The appellate record includes appellate counsel's motion for new trial, alleging ineffective assistance
of trial counsel. The motion included the affidavit of appellant's trial counsel. After a hearing, the trial court
overruled the motion. 
10. One count was aggravated assault with a deadly weapon, and the other count was aggravated
assault causing serious bodily injury. Ms. James testified, without objection, that the deadly weapon in Count
1 was appellant's "hands."
11. The State did not offer these records into evidence.
12. See Davis v. State, 968 S.W.2d 368, 373 (Tex. Crim. App. 1998) (holding evidence of an offense
for which a defendant received deferred adjudication is admissible during the punishment hearing at a trial
for another offense); Hambrick v. State, 11 S.W.3d 241, (Tex. App.-Texarkana 1999, no pet.).
13. Specifically, on cross-examination, counsel asked Ms. James:


 Q. [C]ould you tell us if you are saying that he is not a good candidate for probation?


 A. That's what I'm saying, yes, sir.


 Q. You said he was not a model person who was on community supervision and is that
based on this new offense?


 A. Yes, sir.


14. In Fryer, the court stated, "Moreover, [Valerie] Silva was arguably qualified to give lay opinion
testimony under Rule 701 concerning appellant's suitability for probation because she was acquainted with
appellant and had first-hand knowledge of the commission of the offense." Fryer v. State, 68 S.W.3d 628,
631 n.22 (Tex. Crim. App. 2002).
15. Article 37.07, section 3(g) requires the State to give the defendant advance notice of its intent to
introduce evidence of extraneous offenses at the punishment phase. See Tex. Code Crim. Proc. Ann. art.
37.07, § 3(g) (Vernon Supp. 2008).
16. With respect to these two offenses, the notice stated:


 Act: Aggravated Assault Causes Serious Bodily Injury

 Date: On or About January 23, 2003

 Location: Kleberg County, TX

 Victim: Unknown

 Cause No. Unknown


 Act: Aggravated Assault with a Deadly Weapon

 Date: On or About January 23, 3003

 Location: Kleberg County, TX

 Victim: Unknown

 Cause No. Unknown